# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1368

_____

| | | |
|---|---|---|
| Wayne T. Baker, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Kenneth S. Apfel, Commissioner of | * | |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 21, 1998

Filed: November 10, 1998

_____

Before RICHARD S. ARNOLD, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Wayne Baker appeals the ruling of the district court affirming an administrative law judge's denial of social security disability benefits. Because the administrative law judge (ALJ) failed to consider Baker's inability to work on a full-time basis, there is not substantial evidence to support the ALJ's decision. Accordingly, we reverse.

## I.    BACKGROUND

Baker, who was forty-nine years old at the time of the hearing in November 1994, spent most of his life working in unskilled or semi-skilled positions requiring physical labor. He was employed as a survey crew supervisor, poultry grower, production worker, and equipment installer. He suffers from arthritis in his knees, right hip, and right shoulder, and chronic back pain. The record contains no evidence of a limited range of motion, but shows that his joint and back pain results in the need to alternate between sitting and standing, as well as limits his ability to stoop, lift, and carry. His other impairments include muscle tension headaches, migraine headaches, and depression. Baker began experiencing headaches in 1991, and both the intensity and frequency of the headaches increased over time. His personal physician referred him to a headache clinic where he was given anti-depressants and taught relaxation techniques to help minimize the tension headaches. The migraine headaches, however, continued unabated. These headaches are often accompanied by nausea and sensitivity to light. The only effective pain medication for the migraines is an injection of Demerol, a narcotic pain drug similar to morphine. The record shows that Baker requires these injections, given by his physician or by the local emergency room, two and sometimes three times per week.[1] In addition, he takes various medications for depression and non-migraine pain. These include Vicodin, Lorcet Plus, Flexeril, Vistaril, Prozac, and Sinequan.

On August 23, 1993, Baker stopped working as a production worker at a food processing plant because of his impairments. He claims that the pain and the effects of his medications prevent him from performing any type of work. Although he has not worked since that time, he has attended college full-time at Arkansas Tech University,

---

[1] At the hearing, Baker testified that the frequency of the migraines varied from two per week to two per month. The record shows over 25 injections were administered in the emergency room between May 1993 and January 1994, and over thirty were administered by his doctor during the same period.

studying psychology and rehabilitation science. He attends class for four hours on Monday, Wednesday, and Friday, and for approximately two hours on Tuesdays and Thursdays. Baker receives accommodations at school. He is allowed to alternate between sitting and standing during class and is allowed to make up for classes and exams missed due to his pain and to medication. Baker testified that between the beginning of the semester and the hearing on November 18, he missed six to seven days due to his headaches. He maintains a 3.1 average in his classes.

At the hearing, Baker testified that he experiences significant pain from the headaches as well as pain in his knees, hip, and shoulder, and that this pain prevents him from working. He also testified that the constant pain and the effects of his medications inhibit his ability to concentrate and focus on a task.

The ALJ found that Baker suffered from severe headaches, and pain in his neck, back, knees, shoulders, hip, and arm, but found Baker's assertions of disabling pain were not credible. Particularly, the ALJ relied on the fact that, with the help of medication, Baker was able to attend school on a full-time basis and maintain a 3.1 average, as well as engage in various domestic and social activities. These facts, the ALJ concluded, are inconsistent with pain so disabling as to interfere with concentration, focus, and light work activities. The ALJ also found that Baker could return to his previous work as a surveyor, or in the alternative, that there exist a significant number of jobs in the national and local economies that Baker could perform given his impairments. Thus, the ALJ determined that Baker was not disabled under the Social Security Act.

Baker sought review of the ALJ's opinion by the Appeals Council and submitted additional evidence, including a Medical Source Statement from his personal physician. The Appeals Council affirmed, as did the district court. Baker appeals.

## II.    DISCUSSION

To receive disability benefits, Baker must establish a physical impairment lasting at least one year that prevents him from engaging in any gainful activity.  See  Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997). To determine disability, the Commissioner uses the familiar five-step sequential evaluation, he determines:  (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities;[2]  (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience);  (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.   See  Kelley v. Callahan,  133  F.3d  583,  587-88  (8th  Cir.  1998).

Once the claimant's impairments and physical capabilities are established, the Commissioner's burden is to demonstrate that the claimant can perform his or her past relevant work, or in the alternative, that jobs are available in the national economy, realistically suited to the claimant's residual functional capabilities. See Talbott v. Bowen, 821 F.2d 511, 514-15 (8th Cir. 1987).  In determining the availability of such jobs, the claimant's exertional and nonexertional impairments, together with his age, education, and previous work experience, must be considered.  See Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998).  The Commissioner may produce evidence of suitable jobs by eliciting testimony by a vocational expert concerning availability of jobs which a person with the claimant's particular residual functional capacity can perform.  Id.  This is generally accomplished by posing hypothetical questions to a vocational expert.  The questions must fairly reflect the abilities and impairments of the

---

[2]The ALJ made no express finding that Baker's impairments are severe, however, we must assume this to be the case as the ALJ continued through all five sequential steps.

claimant as evidenced in the record. See Morse v. Shalala, 32 F.3d 1228, 1230 (8th Cir. 1994). If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. See Greene v. Sullivan, 923 F.2d 99, 101 (8th Cir. 1991).

The expert was asked if there were jobs in the economy for a forty-eight-year-old male with a high school education, who was semi-skilled in surveying, and was limited to light work. The worker was to be on his feet six to eight hours a day and was limited to lifting no more than twenty pounds. The expert responded that there were over a thousand suitable jobs in the area for such a hypothetical worker. The question was further refined to reflect a worker capable of only sedentary work, and who needed to alternate between sitting and standing at will. The expert responded that there would still be a significant number of jobs in the area for such a worker.

The ALJ found that Baker could return to his past relevant employment as a surveyor. Based on the vocational expert's testimony, the ALJ also found, in the alternative, that there were a significant number of jobs in the area for a worker with Baker's residual functional capacity.

Our standard of review is a narrow one. We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole. See Matthews v. Bowen, 879 F.2d 422, 423 (8th Cir. 1989). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997). However, the review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. See Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

The first issue we must address is the ALJ's determination that Baker's assertion of disabling pain was not credible. When assessing the credibility of a claimant's subjective allegations of pain, however, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors. See Cline, 939 F.2d at 565. After considering all the factors, the ALJ concluded that Baker's pain was not disabling. The inconsistencies the ALJ relied on to disbelieve Baker included Baker's ability to maintain a 3.1 average as a full-time college student, attend AA meetings, drive, cook meals, and visit friends and relatives. "[T]he claimant has demonstrated that he has the ability to perform a level of physical activity which is consistent with the capacity to perform a full range of light activity. Accordingly, his allegations of severe and disabling pain . . . are not credible."

Based on all the medical evidence, there is no doubt that Baker experiences pain. The question here is whether the pain, in and of itself, is so severe as to be disabling. In sum, the ALJ concluded that there were few complaints of arthritic pain in the medical record, and the arthritic and headache pain Baker did have was successfully controlled by medication. "The fact that the claimant is able to attend classes for up to four hours a day, prepare meals for an hour, assist with the housework, work on his automobile, grocery shop and visit with friends on a routine basis, clearly indicates that he is able to perform a full range of light activity." Although there is considerable evidence to the contrary, reasonable minds may differ on these points. Thus we must find that there is substantial evidence for the ALJ's conclusion that Baker does not suffer disabling pain. However, the fact that the claimant's pain is not so severe as to be disabling does not necessarily mean that it places no limits or restrictions on his ability to work.

There is no substantial evidence to support the ALJ's conclusion that Baker can return to his position as a surveyor. That position requires the worker to be on his feet virtually all day, and to carry and set up equipment. The medical evidence shows arthritis in Baker's knees and hip. This is reflected also in the fact that he is allowed to, and often does, alternate between sitting and standing while in class at the university. There is no contrary evidence to suggest that Baker can spend an entire work day on his feet. Further, the Medical Source Statement completed by Dr. Russell, Baker's personal physician, expressly limits Baker to standing continuously for one hour, with a total of only two hours standing. Therefore, there is not substantial evidence to support the conclusion that Baker could return to his previous job as a surveyor.[3]

Since we find that Baker has shown that he cannot return to his previous relevant work, the burden is on the Commissioner to show that he is capable of performing jobs that exist in significant numbers in the economy. See Talbott, 821 F.2d at 514. We find that the hypothetical questions posed to the vocational expert were inadequate and did not fairly reflect the claimant's impairments and capabilities. As a result, the Commissioner has failed to carry his burden to show that Baker is qualified for any jobs that exist in significant numbers in the economy. See Greene, 923 F.2d at 101. The hypothetical questions fell short in two respects. First, there was no consideration of the limited time Baker is able to work. Baker testified that he often had to take breaks while studying at home due to the pain in his joints and his medications which make it difficult for him to concentrate for long periods. He also testified that after class he often needs to lie down for several hours due to pain in his joints and fatigue, before engaging in other activities. The most direct evidence however, is the Medical Source Statement from Dr. Russell, which expressly limits Baker's work. Baker can stand

---

[3]In fairness to the ALJ, it should be noted that Dr. Russell's Medical Source Statement was not in evidence before the ALJ, but was properly presented to, and considered by, the Appeals Council. Since our review encompasses the record as a whole, whether the error was by the ALJ or the Appeals Council, the conclusion is the same, there is not substantial evidence to support the ALJ's conclusion.

continuously for one hour, with a total of two hours, and he can sit continuously for two hours, with a total of four.

Generally, a treating physician's opinion is entitled to substantial weight as long as it is supported by medically acceptable clinical or diagnostic data. See Kelley, 133 F.3d at 589. Dr. Russell has treated Baker since 1991. His conclusion is supported by Dr. Jones, who examined Baker in February of 1994 at the request of the Commissioner, and diagnosed Baker as suffering from degenerative osteoarthritis in both knees and non-specific arthritis affecting his neck, right hip and shoulder, and left arm. Again, there is no contrary evidence in the record. Even the evidence relied on by the ALJ to conclude that Baker is capable of performing light work casts doubt on, or fails to support, the conclusion that Baker can perform in a full-time work environment. Baker attends class, with accommodations, for only four hours a day, when he cooks, it is for only an hour at a time. Similarly, his AA meetings and visits with friends last for only a short time. None of Baker's activities indicate Baker is able to work a full shift, and his treating physician expressly limited his work to a maximum of six hours.

While the hypothetical questions posed to the vocational expert did reflect the need for a worker to alternate between sitting and standing, they did not reflect a worker who is limited to working for a total of only six hours at a time. In order for the Commissioner to meet his burden to present significant evidence that jobs exist in the economy for which Baker is qualified, the evidence must show that there are part-time jobs available for workers with his impairments and limitations. See Martin v. Harris, 666 F.2d 1153, 1155 (8th Cir. 1981) (medical evidence indicated claimant could sit and stand for a total of five hours a day and Secretary did not meet his burden by showing availability of full-time jobs within the claimant's skill set).

The second respect in which the hypothetical questions were inadequate is in the ALJ's failure to take into account the uncontroverted fact that Baker will be absent from the workplace an inordinate amount of time due to his migraine headaches. Dr.

Russell, in a brief summary of Baker's condition, stated, "Were I an employer, I would certainly be hesitant to hire somebody with Mr. Baker's medical background because I feel that he would miss a great deal of work and I suspect that Mr. Baker probably is not very employable because of that." At oral argument, Baker urged this court to consider this as evidence that Baker cannot gain employment, and is therefore disabled. We will not give weight to a physician's speculation regarding employers' hiring decisions. However, the statement does contain one assertion that must be given weight, that Baker would "miss a great deal of work." This is a medical opinion by a treating physician and is entitled to substantial weight, especially when supported by acceptable clinical data. This statement is consistent with an earlier report in which Dr. Russell stated one of Baker's work-related limitations would be that he would "miss work due to headaches." Both these opinions are amply supported by page after page of medical records detailing Baker's injections of Demerol, after which he must be driven home by someone else due to the effects of the drug.

Baker testified that "I can only stand [a migraine] as long as I can stand it then I have to go get a shot." Between Dr. Russell and the emergency room, the record indicates that Baker received close to 60 injections between May 1993 and January 1994. The ALJ failed to consider the plain fact that if a person is in the doctor's office or an emergency room receiving injections of Demerol, he is not at the workplace and cannot immediately return to the workplace. Even with the short class schedule of four hours on three days and two hours on others, Baker missed six or seven days between the beginning of the semester and the hearing on November 18. Extended over a year's duration, this equals between 26 and 30 days missed because of headaches, and could be expected to be higher when applied to a longer and less flexible work schedule. Because this excessive absenteeism is caused by Baker's impairment, Baker is entitled to have it considered by the vocational expert. See Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir. 1987).

## III.   CONCLUSION

-9-

There is not substantial evidence in the record as a whole to support the decision of the ALJ. Accordingly, the judgment is reversed and this case is remanded to the district court with directions to remand it to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.