# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2274

_____

Michael A. Pfitzner,                *

                               *

          Appellant,       *

                               *      Appeal from the United States

     v.                      *      District Court for the

                               *      Western District of Missouri.

Kenneth S. Apfel, Commissioner of     *

Social Security,             *

                               *

          Appellee.        *

_____

Submitted: November 20, 1998

Filed: March 1, 1999

_____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Michael A. Pfitzner appeals the district court's affirmance of the Commissioner's denial of Social Security benefits. Because the Administrative Law Judge (ALJ) made no specific findings as to Pfitzner's residual functional capacity and the requirements of his past relevant work, we hold that substantial evidence does not support the denial of benefits. Accordingly, we reverse and remand.

# I.

Pfitzner applied for Social Security Benefits in March 1995, claiming that he had been disabled since June 1, 1994, even though he continued to work after that date. The Social Security Administration denied his request both initially and upon reconsideration. On April 30, 1996, an ALJ heard Pfitzner's case, and on June 7, 1996, the ALJ issued a decision denying Pfitzner's claim. The Appeals Council denied his request for review. After exhausting his administrative remedies, Pfitzner filed this action. The district court granted the Commissioner's motion for summary judgment and affirmed the denial of benefits.

Pfitzner was 48 years old at the time of his hearing. He had previously worked as a truck driver and a maintenance person. Pfitzner initially claimed that arthritis and hypertension caused his disability. Before the ALJ, however, he also argued that he suffered from depression and ulcers.

The record contains a fair amount of medical history, but the opinions and diagnoses of four doctors are most relevant. Doctor Ralph Schmitz attended to Pfitzner's medical needs many times between 1992 and 1996. Dr. Schmitz treated Pfitzner for multiple ailments and complaints including joint problems, pain management, hypertension, and depression. In April 1995, almost one year after the alleged onset of Pfitzner's disability, Dr. Schmitz concluded that Pfitzner could continue to work.

Doctor Stanley Hayes, a rheumatologist, evaluated Pfitzner's joint-related problems in May 1995, and again in February 1996. Dr. Hayes concluded that Pfitzner would be better suited to work that required less standing time and had reduced arm usage. Dr. Hayes further concluded that Pfitzner's degenerative disc disease did not adequately explain his joint pain, and opined that Pfitzner's depression was his "overpowering problem."

Doctor Paul Dobard, a psychiatrist, saw Pfitzner in March and April 1996. In a progress note dated April 1, 1996, Dr. Dobard diagnosed Pfitzner as suffering from major depression with anxiety. On May 9, 1996, however, Dr. Dobard prepared a Medical/Psychological Source Statement - Mental suggesting that Pfitzner's mental limitations were moderate to nonexistent. Of the twenty categories identified on the Source Statement, Dr. Dobard found Pfitzner "not significantly limited" in fifteen categories, "moderately limited" in two categories, and "not ratable" in three categories.

Doctor Rex Peterson, an osteopath, evaluated Pfitzner after the ALJ's decision. Dr. Peterson diagnosed Pfitzner as suffering from several orthopaedic problems including degenerative arthritis in both ankles. Dr. Peterson's notes indicate that prednisone helped to control Pfitzner's pain. At some point, Dr. Peterson signed an undated form in support of Pfitzner's application for a disabled person's license plate. Although the form included no substantiating analysis or other specific information, it identified Pfitzner as being permanently disabled.

Pfitzner, his friend Dale Kennedy, and Michael Wiseman, a vocational expert, testified before the ALJ. Pfitzner identified a host of physical and mental problems. He testified that he could walk only 25 steps before his ankles hurt, stand for about five minutes, sit with his feet down for about four minutes, and lift five pounds. When asked about his depression, Pfitzner attributed much of his problem to his financial situation and noted that a fire had recently destroyed his house. Most of Dale Kennedy's testimony, albeit largely hearsay, corroborated Pfitzner's subjective complaints. Kennedy admitted that he and Pfitzner worked together on Pfitzner's farm, but that it sometimes took both men to load a single hay bale.

The ALJ presented the vocational expert with one long hypothetical that included virtually any limitation supported by the objective evidence and Pfitzner's subjective complaints. It reflected a person of Pfitzner's age, education, and

experience. It further reflected a person having, inter alia, arthritis, depression, degenerative joint disease, ulcers, and hypertension. The vocational expert testified that such a person could not work.

The ALJ's decision followed the familiar five-step model. See 20 C.F.R. § 404.1520 (1998). See also Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ terminated the inquiry after step four, finding that Pfitzner retained the residual functional capacity to return to his past work as a truck driver.

## II.

"Our standard of review is a narrow one. We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." Baker, 159 F.3d at 1144. Substantial evidence exists if a reasonable mind would find such evidence adequate. Id. "However, the review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Id.

In reaching his conclusion that Pfitzner retained the residual functional capacity to return to his past relevant work, the ALJ recounted most of the relevant medical evidence in the record. Unfortunately, the ALJ never specifically articulated Pfitzner's residual functional capacity, rather he described it only in general terms. Near the end of his decision, for example, the ALJ stated that Pfitzner "retain[ed] the residual functional capacity to perform a wide range of medium work." (Rec. at 29.) In his findings, the ALJ stated that Pfitzner retained the "capacity to perform work related activities except for work involving limitations described in the body of this decision." (Id. at 30.) Pfitzner takes issue with the ALJ's treatment of his residual functional capacity. Specifically, Pfitzner contends that the ALJ's fact-findings on this issue are incomplete or nonexistent. We agree.

4

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991). The Administration's own interpretation of the regulations reflects this need for specificity. The determination that a "claimant retains the functional capacity to perform past work . . . has far-reaching implications and must be developed and explained fully in the disability decision." S.S.R. No. 82-62, 1982 WL 31386, *3 (Ruling 82-62). See also Sells v. Shalala, 48 F.3d 1044, 1046 (8th Cir. 1995) (discussing Ruling 82-62). "This court has held, consistent with Ruling 82-62, that '[a] conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work.'" Id. (quoting Groeper, 932 F.2d at 1239).

Over the course of several pages, the ALJ dutifully discussed the relevant evidence, yet he articulated only the outermost contours of Pfitzner's residual functional capacity. While it is clear that the ALJ found Pfitzner's mental problems moderate and limited to situational depression (see Rec. at 30), the specifics of Pfitzner's physical limitations are not so easily gleaned from the ALJ's decision. Perhaps the ALJ found that Pfitzner had no significant physical limitations. One might infer such a finding from the ALJ's conclusion that "[t]he medical evidence reveals no specific physician imposed physical limitations." (Id. at 29.) Even on our deferential review of the ALJ's decision, we cannot say that substantial evidence supports such a conclusion. Dr. Hayes, a rheumatologist, concluded that Pfitzner's "employment would be better suited for him if he were on his feet less and had less requirements for using his arms." (Id. at 152.) In fact, even the ALJ found that the evidence established that Pfitzner suffered from arthritis. (Id. at 30.) And although Dr. Schmitz concluded at one point that Pfitzner could continue to work, he provided no details indicating what, if any, physical limitations should be placed on Pfitzner's

work activities. Thus, substantial evidence would not support a conclusion that Pfitzner suffered no physical limitations. Because the ALJ failed to specify the details of Pfitzner's residual functional capacity, we cannot say that substantial evidence supports his conclusion that Pfitzner retained the functional capacity to return to his past work. See Groeper, 932 F.2d at 1238-39.

Defining a claimant's residual functional capacity is not the only task required at step four. "The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work." Groeper, 932 F.2d at 1239. The ALJ may discharge this duty by referring to the specific job descriptions in the Dictionary of Occupational Titles that are associated with the claimant's past work. See Sells, 48 F.3d at 1047. Pfitzner asserts that the ALJ erred in this regard as well. We agree.

The ALJ made no specific findings as to the detailed demands of Pfitzner's past relevant work. Nor did the ALJ expressly refer to the Dictionary of Occupational Titles. One could arguably conclude that the ALJ implicitly referred to the Dictionary of Occupational Titles when he stated that "[t]he job of truck driver is described as semiskilled, medium work." (Rec. at 29.) We think, however, that the lack of an express reference reflects more than a mere deficiency in opinion-writing in this case. Cf. McGinnis v. Chater, 74 F.3d 873, 875 (8th Cir. 1996) (noting that asserted errors in opinion-writing do not require a reversal if the error has no effect on the outcome). The Dictionary of Occupational Titles contains several job titles that relate to truck driving, each identifying different job requirements. The ALJ's decision leaves to speculation which of these job descriptions reflects Pfitzner's past relevant work. As such, we simply cannot say that substantial evidence supports the ALJ's decision. See Sells, 41 F.3d at 1046.

## III.

Because the ALJ failed to make the required specific findings as to Pfitzner's residual functional capacity and past work demands, we cannot say that substantial evidence supports the Commissioner's denial of benefits. In view of our decision, we need not address the other issues raised in Pfitzner's briefs. We recognize that the ALJ's decision may not change after properly considering and documenting Pfitzner's residual functional capacity and past work demands. See Groeper, 932 F.2d at 1239. We also recognize that the ALJ may choose to extend his inquiry through the fifth step and find that Pfitzner can perform work other than his past relevant work. Those considerations, however, do not alter our conclusion that the record before us does not support the ALJ's decision that Pfitzner retains the functional capacity to return to his past work. We reverse the district court's judgment in favor of the Commissioner, and we remand the matter with instructions to remand the case to the Commissioner for additional proceedings consistent with this opinion.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT