Margie GOSSETT,

v.

Jo Anne BARNHART, Commissioner of Social Security Administration.

No. 1:04 CV 19.

United States District Court,
E.D. Texas,
Beaumont Division.

May 24, 2005.

Steven S. Packard, Packard, Packard & LaPray, Beaumont, TX, for Plaintiff.

Douglas A. Fletcher, Social Security Administration, Dallas, TX, for Defendant.

### MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CLARK, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, remanding this action to the Commissioner for rehearing under the fourth sentence of 42 U.S.C. § 405(g).

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R. 1(H) for the Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 05–06.[1]

### I. NATURE OF CASE

Plaintiff asks the court to review the Commissioner of Social Security Administration's denial of plaintiff's claim for disability benefits. The Social Security Act authorizes United States district courts to conduct judicial review of the Commissioner's final decisions regarding applications for social security benefits. 42 U.S.C. § 405 (2003).

### II. COMMISSIONER'S DECISION

Plaintiff claims disability commencing in June, 1998, due to multiple impairments: *high blood pressure, thyroid gland malfunction, and debilitation from surgeries on her back, hip, and shoulder.* The Commissioner agrees that plaintiff's impairments are disabling presently, but nevertheless denied plaintiff's application for benefits. This seemingly inconsistent decision is based upon an Administrative Law Judge's findings that plaintiff's impairments did not render her disabled until March 1, 2002, whereas her insured status expired much earlier on December 31, 1999.

The Commissioner—through the Administrative Law Judge—further found that when plaintiff was last insured, she retained residual functional capacity for light work. This capacity enabled her to perform past relevant work as a *nursery worker.* Because ability to continue to perform past relevant work renders claimants ineligible for benefits, the Commissioner denied plaintiff's application with respect to the insured status period.

### III. POINTS OF ERROR

Plaintiff's counsel asserts a familiar laundry list of alleged errors. One unconventional point argues that the Commissioner's decision is not supported by substantial evidence because:

> *The relevant time frame of the ALJ's finding that the Plaintiff was able to perform her past relevant work as a nursery worker precedes the beginning date of her work as a nursery worker.*

Pl.'s Br. at p. 1. As written, this point is cloudy almost to the point of obscurity. As argued, however, counsel clearly contends that the Commissioner's finding on past relevant work lacks substantial evidentiary support because plaintiff never worked as a nursery worker *while insured.*

The Commissioner's brief disputes the premise that prior relevant work means only work while insured. The Commissioner directs the court to evidence establishing that plaintiff was employed as a nursery worker for one year beginning March 1, 2001. Moreover, the Commissioner cites Regulation 20 C.F.R. § 404.1560(b) which defines past relevant work as encompassing *"work done within the past 15 years."* The Commissioner does not suggest how one calculates the 15 year period, but in any event, the context of the argument compels the deduction that the Commissioner argues that the 15–year period encompasses work activity after expiration of insured status.

---

1. This matter formerly was referred under Beaumont General Order 03–02.

## IV. DISCUSSION AND ANALYSIS

The issue for decision is narrow:

> When determining claimants' past relevant work, may the Commissioner consider only work activity while insured?

This issue appears to be one of first impression in Section 405 actions. However, the issue is not novel to the Commissioner, who devised and published an official policy and procedure through a Social Security Ruling. As discussed within, the Commissioner's position here departs from her stated policy and interpretation. Thus, in this action the Commissioner argues against her own rules.

Ultimately, the court must factor in the Commissioner's failure to abide by her own policy when deciding whether to affirm or reverse the decision. Before addressing that thorny question, however, it is appropriate to review several rudimentary principles that figure in the analysis.

### A. Eligibility for Benefits

Plaintiff applied for "Disability Insurance Benefits" (DIB), a program authorized by Title II of the Social Security Act and funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1 (14th ed.2001), *available at* http://www.ssa.gov/OP_Home/handbook/handbook.01. This program provides income to workers who contribute "premiums" through federal Old Age, Survivors, and Disability Insurance payroll deductions or self-employment taxes, and who are subsequently forced by disability into involuntary, premature retirement. *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

As the program name suggests, eligibility for DIB benefits depends on coexistence of two prerequisite conditions: *disability* and *insured status*. *Mathews v. Castro*, 429 U.S. at 186, n. 6, 97 S.Ct. 431. Congress defines disability as "*inability to engage in any substantial gainful activity ... for a continuous period of not less than 12 months.*" 42 U.S.C. § 423(d)(1)(A).[2] Congress delineates several scenarios whereby an individual is insured, the most typical—and applicable here—being when "[c]laimants have accrued 20 quarters of social security coverage ... out of the last 40 quarters." *Thomas v. Schweiker*, 666 F.2d 999, 1001 n. 1 (5th Cir.1982) (citing 42 U.S.C. § 423(c)(1)).

Foreseeably, a person might be insured, but not disabled. Conversely, a person might be disabled, but uninsured. In either instance, an application for DIB benefits must fail because the two conditions must coexist. Thus, one whose insured status lapses and who becomes disabled thereafter is ineligible for benefits. *Thomas v. Schweiker*, 666 F.2d at 1001 n. 1.

### B. Analytical Model Established by Regulation

The Commissioner utilizes a complex analytical procedure for evaluating severity of alleged impairments and their effect on a person's ability to engage in substantial gainful activity. Administrative adjudicators employ a five-step sequential analysis for initial disability decisions. If a claimant is found not disabled at any step, remaining steps are not considered. 20 C.F.R. § 404.1520 (2003). This procedure

---

2. Regulations flesh out the concept of substantial gainful activity:

 "*Substantial work activity is work activity that involves doing significant physical or mental activities.... Gainful work activity is work activity that you do for pay or profit.*"

 20 C.F.R. § 404.1572(a)-(b) (2004).

has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

■ At Step 4, the Commissioner first determines a claimant's "residual functional capacity" (RFC).[3] The Commissioner next considers the claimant's vocational background, and determines whether the claimant's RFC prevents the claimant from engaging in regular previous employment, referred to most frequently as *past relevant work.* If so, a *prima facie* case of disability is established, and the burden of going forward (to the fifth step) shifts to the Commissioner. 20 C.F.R. § 404.1520(f) (2004); *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987). If not, the inquiry ends and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) (2004).

The Commissioner's logic is well-grounded. When impairments, even though severe, do not prevent one from working as before, one can engage in substantial gainful employment. Therefore, there is no disability within the meaning of the statute.

## C. Defining and Determining Past Relevant Work

■ The Commissioner defines "past relevant work" as follows:

---

**3.** Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2004). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

**4.** The specific required findings are:

---

*Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.*

Regulation 20 C.F.R. § 404.1560(b)(1). As this case demonstrates, even that reasonably specific definition is capable of varying interpretation, and the manner for determining what constitutes past relevant work is unclear. Hence, the Commissioner has issued a Ruling to guide administrative adjudicators when determining whether claimants can perform their past relevant work. *See* Social Security Ruling 82–62, *"Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General,"* Soc. Sec. R. 82–62 (1982), 1982 WL 31386. The Ruling's purpose is

> "[t]o state the policy and explain the procedures for determining a disability claimant's capacity to do past relevant work (PRW) as set forth in the regulations, and to clarify the provisions *so that [the regulations] will be consistently applied."*

Soc. Sec. R. 82–62 (1982), 1982 WL 31386, at *1 (emphasis added).

The Ruling directs adjudicators to set forth a rationale regarding ability to perform past relevant work which *"show[s] clearly how specific evidence leads to a conclusion." Id.* at *4. Moreover, when adjudicators determine that claimants can perform past relevant work, their decision must contain certain specific findings listed in the note.[4] Of particular relevance here,

---

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Soc. Sec. R. 82–62, at *4.

the Ruling also addresses cases when claims are adjudicated *after expiration of insured status*. In those instances, the Ruling states:

> In ... cases in which the claimant's ... insured status was last met prior to adjudication, ... work performed for *the 15–year period preceding the date ... disability insured status requirement was last met* would generally be considered relevant, since the claimant's capacity for SGA as of that date represents a critical disability issue.

*Id.*, at *2 (italics added).

## D. Application

Even the Ruling is somewhat equivocal in that it states that work performed for the 15–year period preceding the date disability insured status requirement was last met is relevant *generally*. The Commissioner articulates no exceptions, however, and published jurisprudence neither disapproves the Commissioner's policy or formulates exceptions to it. In any event, one can presuppose that post-insured employment at a *lower exertional level* than was required for work performed while insured would not constitute an exception. Otherwise, this provision of the Ruling would be pointless.[5]

Finally, any doubt but that the intent of the Ruling is to limit consideration of voca-

tional history to the 15 years prior to the date insured status was last met—as advocated here by plaintiff—is dispelled by the Commissioner's *Program Operations Manual System* (POMS) which unambiguously states that the relevant work period for Title II(DIB) claims is:

> "15 years prior to the date of adjudication *(or, if earlier, prior to the date insured status was last met)."*

POMS § DI 25001.001, available at http://policy.ssa.gov/poms.nsf/lnx (Apr. 26, 2005) (emphasis added). Consequently, the Commissioner's official policy and interpretation is that past relevant work means work performed while insured.

Rulings "bind ... all components of the Social Security Administration."[6] Here, the Administrative Law Judge violated Ruling 82–62 because, when making findings regarding plaintiff's past relevant work, he considered evidence of vocational history after her insured status expired. Consequently, the court must determine next what significance to ascribe to that violation.

■ Rulings lack force of law, and are not binding on courts.[7] Thus, the Administrative Law Judge's violation of Soc. Sec. R. 82–62 does not *ipso facto* mean that the Commissioner's decision must be reversed.

---

5. One might argue that evidence of sustained employment after expiration of insured status at a *higher exertional level* than was required by prior work performed while still insured might be *relevant* to one's ability to perform past work. Even then, however, the subsequent employment could not be characterized fairly as past relevant work.

6. *See* 20 C.F. R. § 402.35(b)(1) (2004); *see also Spellman v. Shalala,* 1 F.3d 357, 361 n. 7 (5th Cir.1993).

7. Social Security Rulings constitute interpretive rules, general statements of policy, or rules of the Social Security Administration's organization, procedure, or practice. As

such, they are exempt from the Administrative Procedure Act's notice and comment requirements. 5 U.S.C. § 553(b)(3)(A). *See Bailey v. Sullivan,* 885 F.2d 52, 62 (3rd Cir.1989); *Friedrich v. Secretary,* 894 F.2d 829, 834 (6th Cir.1990). Consequently, interpretive rules and general statements of policy do not have the force and effect of law. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979); *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). Rather, as one authoritative source puts it, *"In general, an interpretive rule simply states what the administrative agency thinks the statute means...."* 1 Soc. Sec. Law & Prac. § 1:20 (2005).

Nonetheless, rulings may be consulted when the statute at issue provides little guidance. *B.B. ex. rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir.1981). The Fifth Circuit frequently relies on rulings in evaluating ALJs' decisions.[8] More significantly here, courts within this circuit and in other circuits specifically rely upon and enforce Soc. Sec. R. 82–62. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *Pfitzner v. Apfel*, 169 F.3d 566, 568 (8th Cir.1999); *Winfrey v. Chater*, 92 F.3d 1017, 1023, 1025 (10th Cir.1996); *Dangel v. Massanari*, No. 1:01–CV–012–C, 2001 WL 1335915, at *3 (N.D.Tex. Oct.24, 2001); *Atkins v. Apfel*, No. Civ. A. 99–3874, 2000 WL 1335820, at *3 (E.D.La. Sept.14, 2000).

■ The court, therefore, must decide whether to adopt and enforce the Ruling in this case. Several reasons favor that option. First, erroneously characterizing plaintiff's nursery work as past relevant work was significant. Plaintiff's past relevant work *while insured* was as "cashier, stocker, and forklift driver" in a "hardware" business "from 1985 to 1994." Tr. 112. Expert vocational testimony placed all that work at the *medium* exertional level. Tr. 29. The Administrative Law Judge determined, however, that plaintiff had residual functional capacity for only *light work* while insured. Tr. 18, Finding 7. Had the Administrative Law Judge considered only past work while insured, he would have found that plaintiff could no longer perform her past relevant work. Thus, plaintiff would have established a *prima facie* showing of disability. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f) (2004); *See White v. Harris*, 605 F.2d 867, 869 (5th Cir.1979) ("If the claimant proves that he is unable to do his usual job, the burden shifts to the Secretary to show that there is some other kind of 'substantial gainful activity' that the claimant is able to perform").

Second, notions of fundamental fairness argue for adopting and enforcing the Ruling. There is nothing monstrous in requiring an administrative agency to follow its own rules, especially rules designed to insure consistent results. There is nothing quixotic about analytical symmetry and balance. When claimants can prove entitlement to benefits only through evidence of impairments existing *while insured*, their *prima facie* cases should be gauged by their vocational histories during the same periods of time. The standard, after all, is past *relevant* work. The insured period obviously is the relevant period, both for impairments and work.

Third, adopting and enforcing the Ruling does no violence to the governing statute, applicable regulations, or interests of justice. When the Commissioner determines at Step 4 that a claimant can no longer perform past relevant work, the Commissioner has an opportunity at Step 5 to show that the claimant can perform alternative available employment. 20 C.F.R. § 404.1520(a)(4)(v) (2004). Plaintiff's ability to work as a nursery worker after the date she claimed to be disabled obviously is relevant to question of whether she could perform alternative work. No regulation, ruling or court decision prevents the Commissioner from considering at Step 5 work that claimants actually perform after onset of their claimed disability.

■ Plaintiff's post-insured, lighter exertional work in a nursery was not relevant to her ability to perform heavier exertional past relevant work. However, such

---

8. *See Myers v. Apfel*, 238 F.3d 617, (5th Cir. 2001) (relying on SSR 96–8p and 96–9p); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (relying on SSR 96–2p); *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir.1994) (relying on SSR 83–12); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir.1993) (relying on SSR 83–20).

work might be relevant—even determinative—evidence at Step 5 that plaintiff remained capable of performing alternative available work after claiming to be disabled.

 Unfortunately, the Administrative Law Judge did not engage in a Step 5 analysis of plaintiff's claim. This compels the court to conclude that the Commissioner's decision—based entirely on a finding of ability to perform past relevant work as a nursery worker—is unsupported by substantial evidence. Simply put, past relevant work is work performed while insured, and no evidence supports the finding that plaintiff was employed as a nursery worker or in other "light work" while insured.[9]

### E. Other Points of Error

Because this action must be reversed and remanded for lack of substantial evidence supporting the critical finding regarding past relevant work, the court need not address plaintiff's remaining points. Those points assert that the Commissioner erred in four respects in failing to apply correct principles of law when determining plaintiff's residual functional capacity. To minimize potential for future appeals, the Commissioner should consider those points upon remand. In addition, the undersigned notes *sua sponte* that the Administrative Law Judge in this action did not otherwise comply with those portions of Soc. Sec. R. 82–62, which directs that determinations of ability to perform past relevant work "*show clearly how specific evidence leads to a conclusion*" and make specific findings of fact. The Commissioner would be well-advised to insure that such features are incorporated into any

subsequent decision, especially if the Commissioner again denies plaintiff's claim at Step 4 based upon a finding that she retains ability to perform past relevant work.

### V. Recommendation

The Commissioner's decision should be reversed, and the matter remanded for reconsideration.

### VI. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

April 27, 2005.

---

**9.** Substantial evidence is more than a scintilla, but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992); it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to

support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983)).