MELLOY, Circuit Judge,
Dissenting.
I find that the record and the ALJ’s analysis do not support the determination that Ms. Young is able to perform her prior work. The majority finds that the record presents a close question upon which reasonable minds could differ. As a result, the majority necessarily defers to the agency’s ruling as reflected in the ALJ’s opinion. See Kluenser, supra at 4. Because I believe the ALJ failed to adequately discharge the duties of developing the record and explaining its findings, I find it unnecessary to extend such deference. Accordingly, I dissent.
Among other well-documented medical issues, Ms. Young, who is right handed, suffers from a right-arm deformity and widely distributed non-cancerous bone and joint tumors of sufficient severity that several have been removed via surgery. The ALJ found that Ms. Young suffered from a severe medical impairment in that she suffers from “osteochondromas of the arms, leg, feet, and carpal tunnel syndrome of right hand with status post carpal tunnel release.” The ALJ deemed Ms. Young to be “generally credible” but also found “[t]he claimant’s statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.” [2]
The ALJ, in effect, set forth a graduated credibility determination defined in terms of the functional-capacity standard for “light work.” While there is nothing inherently objectionable about such a finding, it makes judicial review of the next step in the sequential analysis (ability to perform past relevant work) difficult. Review is difficult because the findings do not make clear which limitations the ALJ believed to be exaggerated. It would seem the only permissible reading of the ALJ’s opinion is that all of Ms. Young’s complaints are well-founded and that her pain and limitations are real but exaggerated. The extent of the exaggeration is such that any limitations relevant to residual functional capacity become non-credible somewhere shy of the severity required to preclude “light work.”
Such a reading is at odds with the fact that the ALJ credited the experts’ opinions as to relevant limitations. For example, the ALJ claimed to “accord[] significant weight” to the opinion of consulting physician Dr. Sudhir Kumar. Dr. Kumar determined that “[t]he claimant is able to sit/ stand/walk, however, the ability to handle objects is limited secondary to right forearm deformity thereby limiting rapid repetitive movement of the wrist but not all movement.” The ALJ also credited Dr. Jim Takach’s opinion that Ms. Young suffered “manipulative limitations in handling, fingering and feeling and [was subject to] the added restriction of no rapid repetitive movements of the right wrist.”
In making the residual functional capacity determination, the ALJ arguably identified the importance of manual dexterity and fine motor skills, stating, “Generally, if someone can to light work, he or she can also do sedentary work, unless there are additional limiting factors, such as loss of fine dexterity or inability to sit for long periods of time. See 20 C.F.R. §§ 404.1567(a) and 416.967(a).” The ALJ proceeded, however, to identify Ms. *494 Young’s past relevant work as jobs requiring manual dexterity and repetitive movement of wrists and hands: factory packer or factory assembler. The ALJ concluded Ms. Young could perform such work because it was “light work.”
In making this finding, the ALJ did not expressly address the functional limitations regarding rapid repetitive movements, manipulative limitations, or sensorial limitations as cited by Dr. Takach and Dr. Kumar. Further, the ALJ relied upon the opinion of a vocational expert even though the ALJ did not include in the hypothetical posed to the vocational expert the limitations cited by Drs. Takach and Kumar. Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir.1994) (“ ‘Testimony elicited by hypothetical questions that do not relate with precision all of a claimant’s impairments cannot constitute substantial evidence to support’ an administrative law judge’s decision to deny benefits.” (quoting Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir.1992))). As a result, the ultimate conclusion that Ms. Young possessed the residual functional capacity to perform the cited jobs contradicts the accepted expert’s descriptions of her limitations and rests upon the opinion of a vocational expert who was not asked to consider all of Ms. Young’s limitations. Against this backdrop, I would find that the ALJ failed to develop the record and make the explicit findings necessary to support the final result.
The majority correctly notes that “[t]he ALJ may discharge this duty [to develop the record and make explicit findings regarding past relevant work] by referring to the specific job descriptions in the [DOT] that are associated with claimant’s past work.” Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir.1999). I do not believe that this general rule necessarily stands for the proposition that an ALJ in every case effectively discharges its duty through mere reference to the DOT. Such a reference may suffice in many if not most cases. More is needed, however, when an ALJ accepts as credible and purports to place “significant weight” upon experts’ opinions regarding limitations seemingly at odds with the physical demands of the recited job.
I would reverse and remand with instructions for the district court to remand for further administrative proceedings.

. The reference to “the above residual functional capacity assessment” was a reference to the following finding: “After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work.”