**Erin HEDGES Plaintiff**

v.

**Jo Anne B. BARNHART,[1] Commissioner, Social Security Administration Defendant**

**No. CIV. 01–6234.**

United States District Court, W.D. Arkansas, Hot Springs Division.

March 12, 2003.

1. Jo Anne B. Barnhart became the Commissioner of the Social Security Administration on November 9, 2001. Pursuant to *Rule*

*25(d)(1), Federal Rules of Civil Procedure,* Jo Anne B. Barnhart should be substituted for Acting Commissioner Larry G. Massanari, as defendant in this suit. No further action need be taken to continue this suit, by reason of the last sentence of *§ 205(g)* of The Social Security Act, *42 U.S.C. § 405(g).*

H. Mayo Smith, Gary Eubanks & Associates, Little Rock, AR, for Erin Hedges, plaintiff.

Larry R. McCord, U.S. Attorney's Office, Fort Smith, AR, for Social Security Administration Commissioner, defendant.

## MEMORANDUM OPINION

SHEPHERD, United States Magistrate Judge.

### Factual and Procedural Background:

Erin Hedges appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her applications for disability insurance benefits (hereinafter "DIB"), and supplemental security income benefits (hereinafter "SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and *423,* and § 1602 of Title XVI, *42 U.S.C. § 1381a,* respectively.

Plaintiff was 21 years of age at the time of the administrative hearing, has a high school education and, at the time of the hearing, was a sophomore in college (T. 28, 64). She has worked in the past as a veterinarian's assistant and as a sales clerk (T. 69). Plaintiff became unable to work in

May, 1998, due to residuals from a serious motor vehicle accident, including: comminuted distal fracture of the left femur, requiring open reduction with internal fixation; laminectomy at L1; L1–2 discectomy; skin grafting; and, stress. She protectively filed her applications on May 12, 1998 (52–54, 162–165).

The Social Security Administration denied plaintiff's applications initially and on reconsideration (T. 43–44, 47–48, 166–167, 169–171). Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on January 10, 2000 (T. 27–39). The ALJ rendered an unfavorable decision on March 30, 2000 (T. 13–19). By Order entered November 7, 2001, the Appeals Council denied the plaintiff's Request for Review of the hearing decision (T. 4–5), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

*Applicable Law:*

The ALJ evaluated the plaintiff's claim according to the five-step sequential evaluation analysis prescribed by the social security regulations. See *20 C.F.R. §§ 404.1520(a)-(f);* see also *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (describing five-step analysis). At the first step, the ALJ found the plaintiff had not engaged in substantial gainful activity since her alleged onset date.[2] In the next two steps, the ALJ determined that plaintiff has severe impairments in the form of residual limitations resulting from status post open left, comminuted distal femur fracture and status post stabilization of the lumbar spine (T. 14–15), but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in

Appendix 1, Subpart P, Regulations No. 4 (T. 18). The ALJ determined that plaintiff retains the residual functional capacity (hereinafter "RFC") for "substantially all of the requirements of sedentary work" (T. 18). See *Young v. Apfel,* 221 F.3d 1065, 1069 n. 5 (8th Cir.2000) (residual functional capacity determined at step four, where the burden of proof rests on the claimant). However, the ALJ found plaintiff unable to perform any of her past relevant work (T. 18). At the fifth step, the burden of production shifts to the Commissioner. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir.2002). Utilizing the Medical–Vocational Guidelines, specifically, sections 404.1567 and 416.967, and Rule 201.28, Appendix 2, Subpart P, Regulations No. 4, the ALJ concluded that a finding of "not disabled" was directed (T. 19). Thus, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (T. 19).

 Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir.2000). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000). As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.,* or

---

2. The plaintiff alleges an onset date of April 30, 1998 (T. 52, 163). However, we note that with respect to SSI, benefits are not payable

for a period prior to the date of the application. *Cruse v. Bowen,* 867 F.2d 1183, 1187 (8th Cir.1989).

because we would have decided the case differently. See *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993).

To establish entitlement to benefits, the plaintiff must show that she had been unable to engage in any substantial gainful activity by reason of a medically determinable impairment which had lasted or could have been expected to last for not less than 12 months. See *42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).*

■ Further, step four of the sequential analysis used in Social Security disability determinations requires the ALJ to review the plaintiff's residual functional capacity and the physical and mental demands of the plaintiff's past work. *See 20 C.F.R. § 404.1520(e).* "[T]he ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a plaintiff's past relevant work and to compare that with what the plaintiff herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Secretary of Health & Human Servs.,* 887 F.2d 864, 866 (8th Cir.1989) (emphasis in original). These findings require evidence of the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *See id.* at 866 n. 2 (quoting *S.S.R. No. 82–61, Soc.Sec.Rep. 836, 838 (West 1983)).*

The record documents that the plaintiff was involved in a serious motor vehicle accident on April 30, 1998. She underwent numerous surgeries at the University Hospital of Arkansas. On May 1, 1998, Dr. Johannes Gruenwald, Dr. Jason Stewart, Dr. Patrick Gannon and Dr. Robert Garrison performed an irrigation and debridement of plaintiff's left thigh wound and femur fracture, and left knee bridging external fixator (T. 98–100). This surgery was repeated on May 4, 1998 (T. 103–104).

On May 6, 1998, Dr. Gruenwald, Dr. Gannon and Dr. Stewart again irrigated and debrided the open femur fracture, and performed an open reduction and internal fixation of the left femur fracture, with complex wound repair involving greater than 10 centimeters, on the left lower extremity (T. 95–97). On May 8, 1998, Dr. Robert Ingraham and Dr. Daniel Pieper performed an L1 laminectomy, L1–2 discectomy, posterior stabilization from T11 to L3 with pedicle screws at L2–3 and laminar hooks at the T11–12 laminar mass. The doctors also performed a procedure including the harvesting of the left posterior iliac crest bone graft and bone graft placement (T. 107–110). On May 26, 1998, Dr. Gruenwald and Dr. Stewart performed a split-thickness skin graft to the left thigh (T. 122–125). The plaintiff returned to University Hospital of Arkansas for followup treatment, and also continued to see her family physician locally, Dr. A.H. Tilley.

On October 30, 1998, Dr. Tilley opined, as follows:

Erin Hedges is a 19–year old white female who was involved in a near tragic motor vehicle accident on May 1, 1998. She had severe injuries to her leg and back requiring numerous surgeries and a long recuperative period. She was seen on October 22, 1998 in the office for follow-up and continues to have difficulty maintaining activity for any length of time. Specifically, she can stand for 30 minutes, walk for 3 blocks and sit for 1 hour before the pain in her back and leg become[s] severe. She has continual pain in her low back and left knee and is unable to squat or due (sic) any type of kneeling maneuvers. Physical examination was remarkable for flexion of only 90 degrees of her left knee with full extension. She does have crepitus in her left knee and healing graft site in her left thigh with some still open oozing areas that have not completely healed.

Given the young age of this patient and the recovery to this point I do feel that she will have meaningful recovery in the future, but it is unknown at what time this will occur. It is also unknown whether she will have a complete recovery but at this time she is unable to maintain any type of gainful employment and will not likely be able to do so for an indefinite period of time calculated to be at least 12 months.

(T. 141). The record reflects that Dr. Tilley saw the plaintiff on November 24, 1998, at which time she was on crutches, and her knee was noted to be inflamed, with crepitus. The skin graft was healing (T. 140).

On October 29, 1998, Dr. Gruenwald wrote the following:

As of October 29, 1998, due to her Orthopaedic injuries Ms. Hedges will be totally temporarily disabled for a period of six-months to one year.

If you have any questions please do not hesitate to contact my office at (501) 686–5321.

(T. 149). Dr. Gruenwald's progress notes, and all records from the surgeries described above, are contained in the administrative record, herein.

■ The plaintiff asserted at the administrative hearing that, at the very least, she is entitled to a closed period of disability (T. 28). Under *20 C.F.R. § 404.316*, the Commissioner can award Social Security disability benefits either on a continuing basis or for a "closed period." The United States Court of Appeals for the Eighth Circuit has consistently held that disability is not an "all-or-nothing" proposition; a plaintiff who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time. See *Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir.1983); see also *Atkinson v. Bowen*, 864 F.2d 67, 71 (8th Cir.1988). The Commissioner frequently awards such a closed period disability benefit. See, e.g., *Ness v. Sullivan*, 904 F.2d 432, 434–35 (8th Cir.1990); *Woods v. Bowen*, 854 F.2d 288, 290 (8th Cir.1988). Here, the ALJ erred by evaluating only plaintiff's eligibility for disability benefits, and by failing to consider whether she was entitled to a closed period of benefits under *20 C.F.R. § 404.316*. The record is quite clear regarding plaintiff's condition from April 30, 1998 until October, 1999; it is less helpful in determining whether her disability continued beyond that period. See *Harris v. Secretary of Dept. of Health and Human Services*, 959 F.2d 723, 724 (8th Cir.1992).

■ Additionally, in finding that the plaintiff retains the residual functional capacity (hereinafter "RFC"), to perform substantially all of the requirements of sedentary work, the ALJ had to disregard the opinions of plaintiff's treating physicians, and rely on the opinion of a physician who had merely reviewed her medical records, and had neither treated nor examined plaintiff (T. 17, ¶ 3; T. 132–139). The ALJ did so by finding that the opinions of Dr. Gruenwald and Dr. Tilley were "conclusory" and not supported by "specific findings or observations" and were "based upon an unqualified acceptance of the claimant's complaints and a desire to accommodate the claimant's request." (T. 16). We find it highly unlikely that one of the team of specialists/surgeons who labored to get the plaintiff to the point where she was, medically, at the time of the administrative hearing, would author a letter opinion such as that which is found at page 149 of this transcript, merely because the plaintiff "requested" such a letter, or due to an "unqualified acceptance" of the plaintiff's subjective complaints (T. 16, ¶ 1). Therefore, we decline to accept this as an adequate basis upon which to discount the opinions of plaintiff's treating physician and specialist.

■ Under the Commissioner's regulations, a treating physician's opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *20 C.F.R. § 404.1527(d)(2)*. Accordingly, an ALJ should "give good reasons" for discounting a treating physician's opinion. *Dolph v. Barnhart,* 308 F.3d 876, 878–879 (8th Cir.2002); *Prosch v. Apfel,* 201 F.3d at 1013.

■ The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with the plaintiff's medical condition than are other physicians. *Thomas v. Sullivan,* 928 F.2d 255, 259 n. 3 (8th Cir. 1991); see *20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)*. Generally, more weight is given to the opinion of a specialist about medical issues related to the area of the specialty than to the opinion of a source who is not a specialist. *20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5)*; see *Hinchey v. Shalala,* 29 F.3d 428 (8th Cir.1994). By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999), citing *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998). Consequently, reports of non-examining physicians deserve little weight in the overall evaluation of disability, especially in light of evidence to the contrary. See *Woodard v. Schweiker,* 668 F.2d 370, 374 (8th Cir.1981); *Brand v. Secretary of the Department of Health, Education and Welfare, 623 F.2d 523, 527 n. 6 (8th Cir. 1980).*

*Conclusion:*

Accordingly, the ALJ's decision denying benefits to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for consideration of the issue of a closed period of disability, and for proper consideration of the opinions of plaintiff's treating physicians, or adequate explanation as to why said opinions and findings are discounted. Upon remand, interrogatories should be directed to the treating physicians, to aid in determining the question of a closed period of disability. See *Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir.1990).