DECISION
Daniel Johnson ("Johnson" or "appellant") appeals from a decision of a Hearing Officer of the Rhode Island Department of Human Services ("DHS"), denying his application for medical assistance. The appellant argues that the Hearing Officer erred by failing to allocate the appropriate weight to his treating physician's opinion, failing to apply the correct legal standard, and failing to make sufficient findings of fact in support of its decision. DHS counters that the Hearing Officer's decision was made upon proper application of the law and is supported by the evidence. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
The appellant is a thirty-nine year-old male who worked in heavy construction, carpentry, and scuba diving for more than 20 years until he was abruptly forced to stop working as a result of a foot injury. That injury occurred in March of 2002, when appellant's foot was run over by a car on Route 95. (Hr'g Tr., dated Sept. 20, 2005 at 4-5.) In early March 2002, appellant saw an orthopedic surgeon, Christopher W. DiGiovanni, M.D. ("Dr. DiGiovanni"), who diagnosed a very severe crush injury to Johnson's right foot. (R.I. Hosp. Operating R., dated March 7, 2002.) The injury required a series of surgeries for multiple fractures and soft tissue injuries.
Due to swelling and burning sensations, appellant had pieces of surgical hardware removed from his foot in April 2002. (Tr. at 6-7; R.I. Hosp. Operating R., dated April 29, 2002.) This resulted in limitation of motion and gross swelling and stiffness. Dr. DiGiovanni noted in July 2002 that appellant was off medication and basically pain free. (University Orthopedics Evaluation, dated July 24, 2002.) He noted that the foot was healing and in satisfactory alignment, although appellant would experience moderate swelling for a year or two. Id. Appellant had additional hardware removed in August 2002 because of protruding hardware and ongoing pain. After three in-patient and two out-patient surgeries, amputation was considered. (Tr. at 5-6.)
In September 2002, Dr. DiGiovanni declared appellant to be at maximum medical improvement with a 29% lower extremity impairment rating based on American Medical Association (AMA) Guidelines, clearing him to return to work. (University Orthopedics Evaluation, dated Sept. 4, 2002.) However, a few months later in December 2002, Dr. DiGiovanni changed his rating to 33% due to Johnson's continued foot pain, fatigue, and inability to perform his prior carpentry work. (University Orthopedics Evaluation, dated December 19, 2002.)
More than one and one-half years later, on September 23, 2004, Johnson returned to Dr. DiGiovanni, and Dr. DiGiovanni reported that he was supportive of appellant's disability application. (University Orthopedics Evaluation, dated Sept. 23, 2004.) However, Dr. DiGiovanni reported that he believed there were many jobs Johnson could do "off his feet." Id. Therefore, Dr. DiGiovanni found appellant was not totally disabled. Id. Instead, Dr. Giovanni concluded that Johnson could not engage in prolonged standing, walking, climbing or work involving heights. Id. In January of 2005, upon Dr. DiGiovanni's referral, Johnson began seeing Jerrold Rosenberg, M.D. (Dr. Rosenberg) for pain.
Dr. Rosenberg, a pain specialist, saw appellant between January and September of 2005. During that time, Dr. Rosenberg consistently diagnosed Johnson as suffering from Chronic Pain Syndrome. EMG (electromyography) and NCV (nerve conduction velocity) tests showed abnormalities in parts of the foot, but a nerve test was inconclusive with no major nerve insult shown. (Letter from Dr. Rosenberg, dated Feb. 2, 2005; see Nerve Conduction Report, dated Feb. 2, 2005; see also
Waveforms, dated Feb. 2, 2005.) Dr. Rosenberg continued to prescribe medications as Johnson's complaints of pain persisted and increased in June and August of 2005. At Johnson's last visit to Dr. Rosenberg in September 2005, Johnson reported spasms and limited motion. Dr. Rosenberg increased Johnson's medication.
During the summer of 2005, Johnson underwent physical therapy in which his pain was reported as "current pain 7/10, best 6/10 and worst 10/10." (R.I. Hospital Rehabilitation Services R., dated July 19, 2005.) The physical therapist reported that Johnson's standing tolerance and ambulation tolerance were 10-15 minutes. The reports also noted he used a cane and tended to under-report his pain.
On May 18, 2005, appellant applied for Medical Assistance ("MA") for disability coverage. On that same day, Dr. Rosenberg completed Johnson's MA-63 form in support of his disability application. He diagnosed Johnson with Reflex Sympathetic Dystrophy ("RSD") Lower Limb, citing supporting symptoms of numbness, weakness, and pain and rendering his prognosis as "undetermined." (MA-63 Physician Examination R. (MA-63), dated May 17, 2005, at 2.) The form provided space to indicate whether claimant could perform specified functional activities for "0," "1," or more hours. Dr. Rosenberg circled that Johnson was functionally limited to "0" hours of walking, standing, sitting, reaching, bending, and lifting. Id. at 3.
With his disability application, Johnson submitted an AP-70 Information for Determination of Disability form, on which he indicated he has chronic pain and experiences greater pain when sitting, standing, or walking. (AP-70 Information for Disability Form, dated May 16, 2005, at 1.) He stated that the pain makes him lose concentration and impinges his ability to deal with others. Id. He cannot cook, vacuum, do laundry, walk, or talk on the phone. Id. at 3. He indicated he can do dishes, dust, and make beds; however, he has problems doing these activities because he has "problems sitting, standing, moving around because of foot disabilities and pain caused by [his] disability." Id. The DHS issued a written denial of Medical Assistance on August 12, 2005. Johnson filed a timely request for a hearing.
On September 20, 2005, DHS conducted an administrative hearing on Johnson's application. Johnson testified that in 2003 he returned to work and attempted several jobs, i.e. light bridge work at Cardi Construction, a driver for Haskell Construction. (Tr. at 12-14.) However, he was unable to perform the work because of the March 2002 injury, and he was quickly laid off. Johnson testified to continual discomfort, worsening pain throughout the day, and a need to elevate his foot every chance he gets. (Tr. at 8.) The DHS Medical Assistance Review Team ("MART") reviewed the evidence. This evidence included Dr. Rosenberg's MA-63 Physician's Examination Report, the AP-70 form completed by Johnson, and medical records from Dr. DiGiovanni at University Orthopedics, Rhode Island Hospital Rehabilitation Services. The record was left open for 30 days for more documentation to be submitted. (Tr. at 21.) The Hearing Officer commented that appellant may want to submit additional materials, noting that appellant's physical therapy reports document "increase pain with increased activity level." (Tr. at 21.) The Hearing Officer further remarked as follows:
 "Ms. DiOrio: . . . the physical therapy gives a good picture of —
 Mr. Amaral: — how you are." (Tr. at 21.)
In an Administrative Hearing Decision dated December 8, 2005, the DHS Hearing Officer confirmed the MART's rejection of Johnson's disability application. Utilizing the five-step test for disability, the MART found that Johnson is capable of performing sedentary work. The instant timely appeal followed.
 Standard of Review
The Superior Court's review of an appeal of an agency decision is governed by § 42-35-15(g), which provides the following:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or f
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an administrative agency decision pursuant to § 42-35-15, this Court acts in the same manner as an appellate court with a limited scope of review. Mine Safety Appliances v. Berry, 620 A.2d 1255, 1259
(R.I. 1993). Therefore, great deference must be given to an agency's final decision. R.I. Temps, Inc. v. Dep't of Labor Training,749 A.2d 1121, 1125 (R.I. 2000). In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Ctr. forBehavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I.1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Shipyard. Inc. v. Rhode IslandCommission for Human Rights, 673 A.2d 457, 459 (R.I. 1996).
Questions of law are not binding upon the court and are reviewedde novo. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (R.I. 1977); Bunch v. Bd. of Review, R.I. Dep't of Empl. Training, 690 A.2d 335, 337 (R.I. 1997). This Court may not substitute its judgment for that of the agency on issues of fact or with regard to the credibility of witnesses where substantial evidence exists to support the agency's findings. See Mercantum Farm Corp. v. Dutra,572 A.2d 286, 288 (R.I. 1990); Barros, 710 A.2d at 684; Baker v. Dep't ofEmployment and Training Bd. of Review, 637 A.2d 360, 366 (R.I. 1994). Only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may this Court reverse. Baker, 637 A.2d at 363 (quoting Milardo v. Coastal Res.Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). However, the Court may review conclusions of law and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Slessinger v. Sec'y of Health HumanServs., 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citingThompson v. Harris, 504 F. Supp. 653, 654 [D. Mass.1980])); Nguyen v.Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).
Five-Step Test: Determining Eligibility for Disability MedicalAssistance
The federal Social Security Act provides medical assistance benefits for disabled individuals. 42 U.S.C. § 1396 et. seq. The program is administered at the state level by DHS, which is authorized to provide medical assistance programs to disabled persons who qualify under the eligibility requirements of G.L. 1956 § 40-8-3 based on federal guidelines. Tierney v. Dep't of Human Services, 793 A.2d 210, 211 (R.I. 2002); 42 U.S.C. § 1396; 20 C.F.R. §§ 416.901-416.998.
The federal guidelines provide that an individual shall be considered "disabled" if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). In a hearing for disability benefits, DHS officers must consider "all relevant evidence," which includes not only objective evidence, but also medical history and subjective evidence, such as the applicant's own statements regarding daily activities, pain, and extent of limitations.20 C.F.R. § 416.924(a), 20 C.F.R. § 416.912(b); § 416.929(d)(1).
A sequential five-step analysis is set forth for disability determinations. See 20 C.F.R. § 416.920. The five steps are as follows:
 1. Is the claimant engaged in substantial gainful activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920(a)(4)(i) — (v). If the claimant has answered yes to steps one and two, and then is found to suffer from a listed impairment at step three, he will automatically be found disabled. If the claimant does not have a listed impairment at step three, but at steps four and five, it is found that he cannot perform past work and cannot perform other work in the national economy, then he will also be found disabled. Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). Therefore, a negative answer to any question, other than step three, leads to a determination of "not disabled." McDaniel v. Bowen,800 F.2d 1026, 1030 (11th Cir. 1986); see also Barnhart v. Thomas, 540 U.S. 20,24 (2003). If a disability is found, it must be expected to last twelve continuous months or end in death. 20 C.F.R. § 416.909. Throughout the inquiry, the applicant bears the burden of proof as to the first four steps; however, if the fifth step is reached, the burden switches to the agency to prove that the applicant can perform work other than his past work in the national economy. Pope v. Shalala, 998 F.2d at 477.
In the instant case, the DHS Hearing Officer rejected appellant's application based on the five-step evaluation.[1] With respect to step one, the officer found that Johnson last worked consistently in 2002 at the time of his injury. (Adm. Hr'g Decision at 3-4.) With respect to step two, she found that the records "clearly indicate severe impairment of [Johnson's] right foot, which impacts at least one basic work activity." (Adm. Hr'g Decision at 6.)
With respect to step three, the Hearing Officer found that Johnson's impairment did not meet or equal the Social Security Listing of Impairments level according to Section 1.00. The Hearing Officer did find "functional limitations" resulting from Johnson's impairment, namely "inability to engage in prolonged standing and walking." However, the Hearing Officer noted that, according to the treating source, Dr. DiGiovanni, Johnson retains the ability to engage in sedentary activities, which predominantly involve sitting for a majority of a workday. Id. The Hearing Officer noted that Johnson "indicated that he was to be taking a computer course (sedentary activity) and also that his activities listed on the AP-70 appear consistent with sedentary tasks." Id. With respect to step four, the Hearing Officer found that Johnson cannot engage in his past work as a construction worker/laborer because of his condition. Id.
By the fifth and final step, the Hearing Officer found that Johnson is not disabled for the purposes of the Medical Assistance Program. The officer noted that Johnson was 39 years of age, possessed a high school equivalent education (GED), and previously engaged in unskilled work.Id. She stated that "[u]nder the Social Security Administration's Medical-Vocational rules (the grids), the appellant is considered a younger worker (at age 39) and with this profile, expected able to transition to sedentary work and hence not disabled," as guided by rule 201.27. Id. Appellant now alleges that the DHS Hearing Officer erred in assessing his disability status.
 DHS's Weighing of Physicians' Opinions Regarding Appellant's Ability To Perform Sedentary Work
The appellant argues that the DHS Hearing Officer erred in giving "no weight" to the opinion and diagnoses of his treating physician, Dr. Rosenberg, who indicated that appellant had zero functional capabilities in sitting, standing, walking, reaching, bending, and lifting. (MA-63 at 3.) Appellant further argues the Hearing Officer erred in giving controlling weight to the opinion of Dr. Giovanni, who stated that he did not consider appellant totally disabled and was capable of performing "lots of jobs . . . off his feet." (University Orthopedics R., dated Sept. 23, 2004, at 1.) DHS responds that this was not a case in which the treating physician's opinion should be determinative. DHS concluded that Dr. Rosenberg's assessment on the MA-63 should not be determinative because it was not supported by medically acceptable clinical and laboratory diagnostic techniques.
In weighing physician opinions for disability determinations,20 C.F.R. 404.1527 (d)(2) provides that treating source physicians' opinions are generally given more weight:
 [g]enerally, we give more weight to opinions from [the patient's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence. . . .
In order to determine a treating source relationship for the purpose of disability benefits, the agency shall consider when "the medical evidence establishes that the claimant sees or has seen the source with a frequency consistent with accepted medical practice for the type of treatment and evaluation required for the claimant's medical condition." 3 Social Security Law and Practice § 37: 78 (2005).
Federal guidelines provide in 20 C.F.R. § 416.927(d)(2) and § 404.1527(d)(2) that the treating source's opinion is afforded controlling weight when the agency finds
 . . . that a treating source's opinion on the issue(s) of the nature and severity of . . . [a claimant's] impairment(s) is [1] well-supported by medically acceptable clinical and laboratory diagnostic techniques and is [2] not inconsistent with the other substantial evidence in . . . [a claimant's] case record. . . .
However, the First Circuit "does not require ALJs [administrative law judges] to give greater weight to opinions of treating physicians in social security disability cases." Arroyo v. Secretary of Health andHuman Services, 932 F.2d 82, 89 (1st Cir. 1991) (citing Tremblay v.Secretary of Health and Human Services, 676 F.2d 11, 13 (1st Cir. 1982)). It has been held that an opinion of a treating physician may be overridden by another physician's opinion for purposes of a disability benefits claim only if supported by substantial evidence in the record. Ann K. Wooster, J.D., Annotation, Determination and Application ofCorrect Legal Standard in Weighing Medical Opinion of Treating Source inSocial Security Disability Cases 149 A.L.R. Fed. 1, § 11 (citingJones v. Shalala, 900 F. Supp. 663, 49 Soc. Sec. Rep. Serv. 353, Unempl. Ins. Rep. (CCH) ¶; 15158B (S.D.N.Y. 1995)); Social Security Regulation ("SSR") 96-2p.
"Substantial evidence" has been defined by the First Circuit as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Currier v. Secretary of Health, Ed. andWelfare, 612 F.2d 594 (1st Cir. 1980). The Court may review conclusions of law and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."Slessinger v. Sec'y of Health Human Servs., 835 F.2d at 939;Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).
At step five of a disability determination, the agency must show substantial evidence of a claimant's ability to perform "sedentary work." Sedentary work is defined by 20 C.F.R. § 416.967(a):
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
Social Security Ruling ("SSR") 83-10 specifies that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Sedentary work is primarily performed in a seated position, and "occasionally" is defined as occurring from very little up to one-third of the time." See SSR 83-10.
Whenever the treating source's opinion is not given controlling weight, it should not be automatically rejected. The agency is still required to consider other factors of length, frequency, nature, and extent of treatment relationship, supportability of opinion by medical evidence, consistency with the record as a whole, specialization of physician, and other factors brought to our attention.20 C.F.R. § 416.927(d)(2)-(6). Social Security Regulation 96-2p states that an agency must still weigh all the factors in 20 C.F.R. § 416.927 and § 404.1527 for a noncontrolling treating physician opinion:
 [a]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must still be weighted using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.
 Also, in some instances, additional development required by a case — for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings — may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and other substantial evidence in the case record.
In the instant case, Dr. Rosenberg is appellant's most recent treating physician because he treated appellant at least 13 times in 2005 over the course of nine months, during which time appellant submitted his disability application. Dr. DiGiovanni has not treated appellant since one to three years before his disability application was made, once in 2004 and multiple times in 2002. Dr. DiGiovanni may be considered a prior treating physician because he examined appellant at least 14 times between 2002 and 2004. However, Dr. DiGiovanni's opinion in 2004, stating that appellant could perform jobs "off his feet," may also be seen as that of a one-time examining physician because it was more than one and one half years after he had last treated appellant on an on-going basis in 2002. If so, Dr. DiGiovanni's opinion would be entitled to less weight than Dr. Rosenberg's. 3 Social Security Law andPractice § 37: 86 (2005). In either case, Dr. Rosenberg is the medical professional able to provide the most recent detailed, longitudinal picture of appellant's current medical impairment(s) and to bring a unique perspective to the most recent medical evidence. Therefore, under20 C.F.R. 404.1527, Dr. Rosenberg's opinion should be given more weight than Dr. DiGiovanni's opinion.
Dr. Rosenberg's opinion, as appellant's most recent treating physician, may be overridden by another physician's opinion for purposes of a disability benefits claim only if supported by substantial evidence in the record. To override Dr. Rosenberg's opinion that appellant could perform less than one hour of various activities, the Hearing Officer primarily relied upon Dr. DiGiovanni's opinion stating that appellant could perform jobs off his feet. However, because Dr. Di Giovanni's opinion is more than one year old, and his on-going treatment of appellant was three years before the appellant's application, Dr. DiGiovanni's opinion does not constitute substantial evidence of appellant's current ability to perform the sedentary activity required at step five of the disability inquiry.
This Court recognizes that an administrative officer may err "by relying on earlier treatment records and ignoring the more recent records" where "records show . . . [a] condition changed over time."[2] Jessee v. Barnhart, 419 F.Supp.2d 919 (S.D.Tex. 2006) (an ALJ erred by relying on physician's earlier treating records and ignoring more recent records that showed increasing headaches, when an examining neurologist did not suggest claimant's pain was exaggerated, and claimant's failure to seek treatment for his headaches was attributable to his lack of medical insurance); see also Parkway IGA v.Lyon, 649 A.2d 1024 (1994) (the Rhode Island Supreme Court found that the Appellate Division should not have relied on stale reports of treating and examining physicians that the injured worker was able to return to his job, where physicians' last examination took place more than one year earlier and evidence was presented that workers' condition had changed). Here, like in Jessee and Parkway IGA, more recent medical records showed appellant's medical condition changed, as Dr. Rosenberg's evaluations indicated that appellant suffered from increased pain since the time he was seeing Dr. DiGiovanni. Similarly, appellant's pain does not appear to have been exaggerated — in fact, an examining physical therapist indicates his pain was underreported. Finally, appellant has communicated that he stopped seeking treatment because of a lack of funding.
Accordingly, here the administrative officer erred by relying on earlier treatment records and ignoring the more recent records. A reasonable mind would not accept Dr. DiGiovanni's opinion from more than one year prior as adequate to support a conclusion about the current condition of appellant's severe injury. In one year or less, a patient with a severe injury can easily undergo drastic changes in medical conditions. See Jessee, 419 F. Supp.2d at 935 (the Court found that an ALJ erred by relying on physician's earlier treating records and ignoring more recent records when claimant showed "good fusion" in January 2002, but by February 2002, the claimant complained of increasing headaches that were so severe his physician referred him to a neurologist). Furthermore, the fact that Dr. DiGiovanni referred appellant to Dr. Rosenberg for pain indicates that Dr. DiGiovanni thought appellant suffered from enough pain to warrant further medical attention by a pain specialist.
Here, the agency has not presented substantial evidence in support of its burden to show that appellant is capable of sedentary work, which requires he is able to stand or walk for two hours and sit for six hours out of an eight-hour workday. See 20 C.F.R. § 416.967(a); seealso SSR 83-10. Dr. DiGiovanni's opinion from one year earlier only stated that appellant could perform jobs "off his feet," but not for any specified length of time. Contrary to the Hearing Officer's determination, the physical therapy (PT) progress reports are not inconsistent with Dr. Rosenberg's assessment. They repeatedly document that appellant could only stand or walk for 10 to 15 minutes at a time. (R.I. Hosp. Physical Therapy Initial Evaluation, dated July 11, 2005; R.I. Hosp. Rehabilitation Services R., dated July 19, 2005.) The "0" hours that Dr. Rosenberg marked on the MA-63 form is the option closest to the PT reports. Appellant's own statements verify that he can only walk for about fifteen minutes, read for only a few chapters, and is constantly in pain while sitting or elevating his foot. (Tr. at 8, 17.) This evidence indicates appellant is not capable of performing the "occasional" walking and standing that may be involved in sedentary jobs for up to one-third of an eight-hour day. See SSR 83-10.
The Hearing Officer further erred in relying upon appellant's own statements that he has performed certain household activities as evidence of his ability to perform the sedentary activities required at step five. (AP-70 at 3.) In doing so, the Hearing Officer ignored the rest of appellant's answer to the question on the AP-70: he indicated that he has problems doing dishes, dusting, making beds, sitting, standing, and moving around because of the pain his foot causes him.Id. The form does not specifically inquire as to how long one can do these activities. When asked about his ability to read, appellant testified that he can only read a few chapters and cannot concentrate. (Tr. at 17.) He also testified that he elevates his foot every chance he gets. After 15 minutes, he doesn't even want to be on it because of the pain, discomfort, and swelling. (Tr. at 8.)
Appellant's other statements on the AP-70 indicate that he spends part of his day reading, watching TV, and listening to music. However, these activities cannot be relied upon as evidence of the ability to be seated rather than lying down in a prone position. Chester v. Callahan,193 F.3d 10, 13 (1st Cir. 1999). Similarly, the agency relies upon appellant's enrollment in a computer class, which he did not complete, for evidence of his ability to perform sedentary activity. His enrollment in that class was in 2002 — three years before DHS's decision on his disability status. It is not substantial evidence of his ability in 2005 to be seated for the six hours required for sedentary work. This Court finds that there was insubstantial evidence in the record to override Dr. Rosenberg's opinion. Because the burden of proof on step five shifted to the agency and the agency failed to meet that burden, the Hearing Officer's finding that appellant was not disabled is not supported by the substantial evidence of record and is clearly erroneous.
Even assuming, arguendo, that there was substantial evidence of record to render Dr. Rosenberg's opinion non-controlling, such a determination does not mean the opinion should be rejected according to SSR 96-2p. The agency was still required to weigh Dr. Rosenberg's opinion using all the factors listed for non-controlling treating physician opinions in20 C.F.R. § 416.927(d)(2)-(6) and § 404.1527. Social Security Regulation 96-2p requires that the agency weighs factors such as length, frequency, nature, extent of treatment relationship, specialization of physician, and other factors brought to the attention of the agency.
Here, the Hearing Officer erred by giving no weight whatsoever to Dr. Rosenberg's opinion and failing to weigh his opinion using factors required by the above federal regulations. The Administrative Hearing Decision letter states that " . . . the MA-63 is not taken as a valid treating source opinion and afforded no weight in this opinion," (Adm. Hr'g Decision Letter at 5), and the letter makes no mention of multiple factors that are significant. The agency did not address the critical fact that Dr. Rosenberg's opinion is most recent, while Dr. DiGiovanni's opinion is over a year old and his on-going treatment relationship with appellant was three years prior to appellant's disability application. The agency gave no weight to the fact that Dr. Rosenberg's specialization is pain, while Dr. DiGiovanni is a surgeon, not a pain specialist. The agency does not mention the fact that the extent of the treatment relationship between Dr. Rosenberg and appellant was over a time period in which physical therapy and appellant's testimony indicate his pain increased from the time when he was seeing Dr. DiGiovanni. Also, the Hearing Officer does not weigh the fact that Dr. DiGiovanni's referral of appellant to Dr. Rosenberg indicates further treatment was needed for appellant's pain and he had not fully recovered at the time of Dr. DiGiovanni's last opinion. Finally, the agency appeared to assess the AP-70 form without weighing the symptoms described in appellant's attachment — where he repeatedly describes the constant "throbbing, gnawing, stabbing" pain he suffers throughout his foot. (Johnson Attach. at 1-2.) The pain and swelling causes him to elevate his foot 75% to 85% of the time. Id. He says " . . . [t]he pain, it makes me miserable and unable to concentrate," and "I cannot think straight. Just the pain is all I think about." Id.
This Court may review and invalidate an agency's disability findings that are derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d at 35 (per curiam). Accordingly, the Court finds the decision of the agency was not supported by the reliable probative, and substantial evidence of record.
 DHS's Statement of Reasons, Findings of Fact, and Other Errors
Appellant further argues that the agency's findings of fact and statement of reasons for the weight given to the evidence are inadequate. Agency decisions on disability status must include findings of fact separately stated, and they must be accompanied by "a concise and explicit statement of the underlying findings." Section 42-35-12;see also Sakonnet Rogers v. Coastal Resources Management Council,536 A.2d 893 (R.I. 1988). Further, federal regulations require that "good reasons" be given for the weight afforded treating source opinions.20 C.F.R. § 416.927(d)(2). All the evidence presented must be evaluated using multiple factors to assess a condition that could reasonably be expected to cause pain. 20 C.F.R. § 416.929.[3] The decision that a claimant can return to work "must be based on more than conclusory statements." Pfitzner v. Apefel, 169 F.3d 566, 568 (8th Cir. 1999).
Specifically, federal regulations require in 20 C.F.R. § 416.1014(a) that the "[s]tate agency will secure from the claimant, or other sources, any evidence it needs to make a disability determination." Section 0302.15 of the Code of Rhode Island Rules provides the following: [i]f a decision cannot be made because of omissions or inconsistencies, the agency representative must contact the appellant by mail, phone or in person for clarification. . . .
In the instant case, the DHS decision letter does include a separate, concise and explicit statement of factual findings. (Adm. Hr'g Decision at 3.) However, the Hearing Officer fails to state "good reasons" why she overlooks the fact that Dr. DiGiovanni's opinion is more than a year old and the only medical opinion on which she relied. She refers to Dr. DiGiovanni as appellant's treating physician and ignores the fact that he has not seen or treated appellant for over one year, and he had not been appellant's on-going treating physician since three years before. The Hearing Officer states that Dr. Rosenberg's reports lacked detail, but she fails to state good reasons why Dr. Rosenberg's opinion is discarded entirely and given no deference whatsoever.
Furthermore, the agency offers conclusory statements that lack substantial and specific medical evidence. On the question of whether appellant can do sedentary work, the Hearing Officer states the following: "that the appellant uses a cane for ambulation makes it quite difficult for him to engage in activities of greater than sedentary level, thus sedentary is reasonable." Id. This reasoning is arbitrary and capricious — it assumes that because the cane indicates appellant cannot engage in more than sedentary work, he must be able to engage in sedentary work. It is unsupported by specific medical evidence.
With respect to the appellant's age, the Hearing Officer further states "[u]nder the guidance of the Social Security Administration's Medical — Vocational rules (the grids), the appellant is considered a younger worker (age 39) and with this profile, expected able to transition to sedentary work and hence not disabled." Id. The conclusion that appellant is not disabled follows a generalized statement regarding his age that does not weigh the specifics of appellant's physical condition. It implies that anyone who is considered a younger worker will transition to sedentary work and, therefore, is not disabled. Generalizations made by the Hearing Officer are precisely the danger that the regulations are meant to avoid: determinations that are not grounded in the individual case. See Pfitzner, 169 F.3d at 568 (where ALJ never specifically articulated [the claimant's] residual functional capacity, rather he described it only in general terms).
With respect to Dr. Rosenberg's diagnosis of appellant's Chronic Pain Syndrome, the Hearing Officer dismisses the diagnosis entirely and fails to provide good reasons and specific medical evidence for doing so. The Hearing Officer stated "as of the more recent medical reports, the appellant was reporting that his pain had lessened such that if this is correct, pain might not then interfere significantly with his ability to attend and concentrate." (Adm. Hr'g Decision at 6 (emphasis added)). The agency makes no finding on pain, it only speculates that the pain may not interfere and may not prevent sedentary work. Appellant's testimony is his pain causes him to elevate his foot constantly and interferes with his concentration.[4]
Despite Dr. Rosenberg's Chronic Pain Syndrome diagnosis and the above testimony that the pain and swelling made sitting "very very uncomfortable" for appellant, the Hearing Officer did not fully address reports of appellant's pain. Furthermore, though the Hearing Officer failed to make a determination on the matter of pain, she proceeded to find appellant capable of sedentary work. The agency's failure to carry its burden on step five to produce substantial specific evidence of claimant's ability to perform sedentary work is in excess of its statutory authority. The effect of appellant's pain is clearly essential to the question of his ability to perform sedentary work, which was determinative for the Hearing Officer's conclusion that appellant was not disabled.
 Conclusion
Although reluctant to do so, upon review of the entire record this Court must reverse DHS's decision with respect to step five of the evaluation process in appellant's case because it is not supported by substantial evidence of record and is affected by errors of law and is in violation of statutory provision. Substantial rights of the appellant have been prejudiced. Accordingly, this Court reverses DHS's decision denying appellant's application for medical assistance. Counsel shall submit an order consistent with this decision.
[1] As preliminary matter, the DHS hearing officer concluded that the MA-63 indicates the duration of appellant's prognosis is "undetermined." (Adm. Decision Letter at 5). Therefore, DHS' argument is moot that appellant's application fails because Dr. Rosenberg indicated that his impairment is not expected to last at least 12 months.
[2] For this same principle in a factually similar case, albeit in an unpublished opinion, see also Kinnaird v. Barnhart, 138 Fed.Appx. 224, slip op., Nos. 04-14247, 03-01424 (11th Cir. Jun. 23, 2005) (an ALJ's decision not to give considerable weight to most recent treating physician's opinion was not supported by substantial evidence in social security disability benefits proceeding; physician reported that claimant was physically incapable of performing any significant amount of work because of multifactoral chronic pain syndrome; and although claimant did not receive treatment for two years, medical evidence from evaluations claimant underwent indicated that his conditions may have worsened). See also Tavarez v. Barnhart, 124 Fed.Appx.48, slip op. No. 04-2754 (2nd Cir. Mar. 2, 2005) (where ALJ's rejection of treating physician opinion was not supported by substantial evidence because it rested only on treating physician's report made four years prior to period of claimed disability, and failed to weigh treating physician's opinion in more recent reports, and failed to give "good reasons" for declining to accord it controlling weight).
[3] 20 C.F.R. § 416.929(3) provides in pertinent part:
 " . . . Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
 (i) Your daily activities;
 (ii) The location, duration, frequency, and intensity of your pain or other symptoms . . .;
 . . . . (v) Treatment, other than medication, you . . . have received for relief of your pain . . .;
 (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g. lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board . . .;
 (vii) Other factors concerning your functional limitations . . . due to pain or other symptoms. . . ."
[4] Q: How often do you — I mean — how long are you able to stand? The doctor writes, "I do not believe that he is capable of prolonged standing and walking. (Inaudible) prolonged (inaudible) hours?
A: Right now, to tell you the truth, 15 minutes, I don't even want to be on my foot anymore.
Q: Because of the pain?
A: Mm hm. It's just very very uncomfortable, painful. Um — and the swelling is just — it's not a good thing.
Q: What about when you're sitting?
A: Sitting? It's very uncomfortable. It's still — my heel — it's the heel part on that that causes pain. Um —
Q: Do you have to like — like — A: Elevate it?
Q: Yeah. A: I elevate it every chance I get. I elevate it all the time. (Tr. at 8, 17.)